IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-378 |
| | § | C.A. No. C-07-350 |
| MARTINDALE F. McLYMONT, | § | |
|     Defendant/Movant. | § | |

### ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE AND ORDER DENYING CERTIFICATE OF APPEALABILITY

Pending before the Court is Martindale F. McLymont's ("McLymont") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 46.)[1] Also before the Court is the government's response, which moves for the dismissal of McLymont's motion. (D.E. 51, 52.) On December 12, 2007, McLymont filed a reply (D.E. 53), which the Court has also considered, as well as a motion to expand the record. (D.E. 54.) For the reasons set forth below, both the government's motion to expand the record and McLymont's motion to expand the record are GRANTED, McLymont's § 2255 motion is DENIED, and the Court DENIES McLymont a Certificate of Appealability.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

### II. BACKGROUND

**A.** **Facts of the Offense**[2]

On April 10, 2002, agents with the Drug Enforcement Administration ("DEA") conducted

---

[1] Unless otherwise noted, docket entry references are to the criminal case, Cr. No. C-04-378.

[2] These facts are taken from McLymont's Presentence Investigation Report at ¶¶ 6-13.

1

surveillance on Julie Richey and Anna Lee Davis in McAllen, Texas. The surveillance was established in preparation for a controlled delivery of marijuana from McAllen, Texas, to Tampa, Florida. A Confidential Source (CS) placed a controlled telephone call to Richey and advised that the CS was on the way to the ranch. Both Richey and Davis were observed leaving their residences and proceeding to the ranch. Once all three individuals were present, the DEA observed the CS remove bundles of marijuana with a net weight of 76.62 kilograms, and place them in the trailer.

On April 12, 2002, the CS made a controlled delivery of substituted marijuana to Martindale McLymont in Tampa. The CS explained that he or she had previously delivered approximately 180 pounds (81 kilograms) of marijuana to McLymont in Tampa in either February or March of 2002, for which he or she had been paid $9,000. On April 12, 2002, the CS called McLymont's cellular telephone and advised that he was on the way. He asked McLymont if they were going to complete the drug transaction at the same place. McLymont advised the CS that he had to pick up Richey at the airport. A the arranged time, the CS met McLymont at the arranged destination, and then followed McLymont and two Jamaican nationals to an apartment in Tampa. McLymont was arrested at this apartment.

Other sources corroborated that a previous load of marijuana had been delivered to McLymont in February or March of 2002. Additionally, DEA agents located an additional 27.94 kilograms of marijuana during the execution of a search warrant at the residence of Davis in McAllen. According to debriefings of others, that marijuana was the remainder of the second load to be transported to McLymont.

**B.    Criminal Proceedings**

On May 23, 2002, McLymont was named in Count One of a three-count indictment filed in Cr. C-02-141(2). Specifically, he was charged with conspiracy to possess with intent to distribute

more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (Cr. No. C-02-141(2), D.E. 1.) On March 11, 2004, McLymont was arrested on a federal warrant, and he was released on March 26, 2004, on a $30,000 surety bond.

He failed to appear for a final pretrial conference on June 30, 2004, and an arrest warrant was issued. (D.E. 15, Presentence Investigation Report ("PSR") at ¶¶ 2, 13.) He had contacted U.S. Pretrial Services on June 20, 2004 and advised that his flight to Corpus Christi had been rescheduled due to weather conditions. McLymont requested that the warrant be rescinded and that his court date be rescheduled. The Court declined to rescind the warrant. Although McLymont indicated that he would self-surrender, he absconded from supervision. On November 8, 2005, he was arrested in Florida by U.S. Marshals without incident on the failure to appear warrant. On July 14, 2004, McLymont was indicted in the instant case for the failure to appear. (PSR at ¶ 13.)

On November 30, 2005, McLymont pleaded guilty to Count One of both indictments, without the benefit of a plea agreement. (PSR at ¶ 5.)

Pursuant to the Court's instructions, the probation department prepared a PSR. (D.E. 15.) The PSR addressed both offenses: the conspiracy count from Cr. C-02-141 and the failure to appear count in the instant case, Cr. C-04-378. As set forth in application note 3 to U.S.S.G. § 2J1.6 (governing cases where the defendant fails to appear), the two offenses were grouped pursuant to U.S.S.G. § 3D1.2(c), and the offense level was calculated to be a 26. A two-level adjustment for obstruction of justice was added, and then a two-level reduction was given for acceptance of responsibility. Accordingly, the total offense level was a 26. Coupled with McLymont's criminal history category of I, the resulting guideline range was 63 to 78 months on both counts. (PSR at ¶ 53.)

McLymont, through his appointed counsel, Chris Iles, filed a number of objections to the

3

PSR. (See Cr. C-02-141, D.E. 148, 149, 150, 153, 154, 163.) The Court initially called the case for sentencing on February 9, 2006. At the beginning of the sentencing hearing, McLymont testified that he was ready for sentencing, that he had received the PSR and had had it for at least 35 days, that he had read it completely and discussed it completely with his attorney, and that his counsel had answered all of his questions concerning it. (D.E. 31, Transcript of Call for Sentencing at 2-3.) The Court then heard argument and testimony from Defendant as to his objections at that time. (See generally D.E. 31.) The Court overruled McLymont's objection to the inclusion in relevant conduct of the marijuana found at Davis' home, and his objection that he should receive a reduction for being a minor participant in the offense.

The Court also addressed McLymont's objections to several factual statements in the PSR, e.g., his contention that he was U.S. citizen, and that the PSR incorrectly identified the Confidential Source as delivering marijuana, when it had been the Confidential Source's father. Although the Court overruled those objections, the Court nonetheless directed the Probation Department to revise the PSR to note that McLymont objected to those factual statements.

The Court did not complete the sentencing hearing at that time, but instead recessed in order to determine whether the two offenses should be grouped for purposes of sentencing, or whether McLymont should be sentenced separately for each offense. (See D.E. 31 at 23-26.)

The case was called for sentencing a second time on February 27, 2006. (D.E. 18.) At that time, the Court heard testimony from McLymont in order to rule on his objection to not receiving safety valve relief. At the conclusion of his testimony, the Court denied his request for safety valve relief, stating that it did not find him to be credible, and that it understood why the government believed he did not truthfully debrief. (D.E. 32, Sentencing Transcript at 46.)

The Court sentenced McLymont to 60 months custody on the underlying conspiracy account

4

and 18 months on the failure to appear count, to run consecutive, for a total amount of 78 months in the custody of the Bureau of Prisons. The Court also imposed a five-year term of supervised release on the conspiracy count and a three-year term on the failure to appear count, to run concurrent, as well as a $100 fine and a $100 special assessment on each count. (D.E. 32, Sentencing Transcript at 60-63; D.E. 23.)

McLymont timely appealed, and the Fifth Circuit affirmed his sentence and conviction in a per curiam opinion issued on February 22, 2007. (D.E. 43, 44.) On appeal, McLymont challenged the Court's grouping of the failure to appear offense with the conspiracy offense. (See D.E. 44.) McLymont filed a petition for writ of certiorari, which was denied on June 25, 2007. McLymont v. United States, No. 06-11549 (S. Ct. June 25, 2007) (order denying petition for certiorari.)

On August 27, 2007, the Clerk received the instant motion for relief under 28 U.S.C. § 2255 from McLymont. (D.E. 46.) It is timely. The Court has also considered the government's response and motion to dismiss (D.E. 51, 52), and McLymont's reply. (D.E. 53.)

### III. MOVANT'S ALLEGATIONS

McLymont lists three grounds for relief in his motion. First, he argues that the final Presentence Investigation Report was not given to him sufficiently in advance of sentencing for him to review it. He claims that he could not review the final PSR until the day of sentencing and that this caused "a lot of conflict in the courtroom." (D.E. 46 at 5.) He further alleges that his court-appointed counsel failed to raise this issue on appeal.

McLymont's second ground for relief is the same argument he raised on appeal, i.e., that the Court's grouping of his offenses was illegal. In support of this argument, he contends that application note 3 of U.S.S.G. § 2J1.6 is in conflict with the statutory directive of 18 U.S.C. § 3146. (D.E. 46 at 6-7.)

5

Third and finally, in an argument closely related to his second ground for relief, McLymont claims that the Court erred in its application of the guidelines to his failure to appear count. He claims that his failure to count should have had an offense level of 10 (after a reduction of 2 for acceptance of responsibility) and should have resulted in a guideline range of 6-12 months, not an 18-month sentence. (D.E. 46 at 8.) He requests that the Court reduce his sentence to avoid "double counting" or reduce his sentence "from 18 months to 6 months." (D.E. 46 at 14.)

In response to the government's motion to dismiss, McLymont has filed a reply, much of which is devoted to explaining why the Court should have found him credible at sentencing. (See D.E. 53 at 1-5.) He also attaches a number of documents addressing issues that he testified about at sentencing, including documents allegedly proving that he made payments toward the support of his children.[3]

Additionally, both McLymont and the government have moved to expand the record to include additional materials. (D.E. 51 at 5; D.E. 54.) Those motions to expand are GRANTED and the Court has considered the additional materials.

As discussed in detail herein, McLymont is not entitled to relief on any of his claims.

---

[3] McLymont appears to be trying to show that he was making child support payments. He misunderstands the Court's concern over this issue at sentencing. The Court questioned McLymont about his payment of child support, not only because it was concerned that he was not paying it, but also (and more importantly) because the amounts he said he was paying in support were inconsistent with the income he was making from his stated, legal employment. That is, McLymont told the U.S. Probation Department that he earned $1500 to $1800 per month from his employment, and told the Court that he was paying a total of approximately $900 per month in child support payments for four children. (S. Tr. at 18, 47-51.) Additionally, McLymont testified that he "loaned" approximately $1500-$2000 to an individual he did not know, an unindicted co-conspirator, in order to assist that co-conspirator in paying child support for the co-conspirator's children, and that the payment was not in exchange for drugs. (S. Tr. at 11-12, 17.) That testimony was simply not credible to the Court, particularly in light of McLymont's reported limited financial resources. (S. Tr. at 18, 27, 52-55.) Thus, the documents attached to McLymont's reply showing that he in fact made some child support payments do not alter the Court's analysis as to his credibility.

## IV. DISCUSSION

**A.** <u>**28 U.S.C. § 2255**</u>

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; <u>United States v. Placente</u>, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>United States v. Vaughn</u>, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982).

**B.** <u>**Claim That He Did Not Have Adequate Time to Review the PSR**</u>

The record in this case clearly shows that McLymont's counsel reviewed the PSR with him prior to sentencing. As noted, McLymont testified at the first call for sentencing hearing that he was ready for sentencing, that he had received the PSR, that he had had the report for at least 35 days, that he had read it completely and discussed it completely with his attorney, and that his counsel had answered all of his questions concerning it. (D.E. 31, Transcript of Call for Sentencing at 2-3.)

McLymont's sworn statements in open court are entitled to a strong presumption of truthfulness. <u>United States v. Lampaziane</u>, 251 F.3d 519, 524 (5th Cir. 2001) (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)). McLymont's sworn statements thus contradict his assertion here that he did not have the PSR for an adequate amount of time.

In his reply, however, McLymont contends that he was answering the Court's questions with regard to an earlier version of the PSR, not the final version. (D.E. 53 at 6.) That is not clear from

the record. Moreover, even if he was given the final PSR the day before sentencing as he contends, McLymont's counsel filed numerous written objections (the last being titled a "Fifth Amended Objections," see Cr. No. C-02-141, D.E. 163) and advanced numerous objections verbally at sentencing. All of those objections were addressed by the Court. Thus, his allegation that he was somehow adversely affected because he was not given sufficient time to review the PSR is without merit. United States v. Mueller, 902 F.2d 336, 347 (5th Cir. 1990) (the requirement that a defendant receive a "reasonable opportunity" to object to factual findings of the court was satisfied by the sentencing hearing itself, which gave full opportunity to the defendant to object, and during which the court merely adopted the presentence investigation report's findings); see also United States v. Patten, 40 F.3d 744, 777 (5th Cir. 1994) (affirming district court's denial of defendant's request for evidentiary hearing at sentencing where defendant was given opportunity to object to presentence investigative report).

For the foregoing reasons, McLymont's first claim fails.

### C.    Claim That the Court Erred in Grouping Offenses

McLymont's second claim is that the Court erred in grouping together his conspiracy and failure to appear counts for sentencing purposes. As an initial matter, to the extent that this claim challenges the Court's application of the sentencing guidelines, it is not a cognizable claim under § 2255. See United States v. Payne, 99 F.3d 1273, 1281-82 (5th Cir. 1996) ("A district court's technical application of the Guidelines does not give rise to a constitutional issue") (quoting United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992); United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999) (misapplication of the sentencing guidelines is not a cognizable claim in a § 2255 motion).

Even if his claim were properly before the Court, moreover, McLymont is not entitled to any

relief on this claim, as already determined by the Fifth Circuit. (See D.E. 44.) It has long been "settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) (affirming district court's refusal to entertain the defendant's § 2255 motion). The Fifth Circuit in this case noted that there is confusion, even within this circuit, regarding the appropriateness of applying U.S.S.G. § 2J1.6, appl. note 3, which instructs that a failure to appear conviction should be grouped with the underlying conviction, an obstruction of justice enhancement applied, and that the two sentences should run consecutively. See D.E. 44 at 2-3 (discussing a 1996 Fifth Circuit decision holding that the grouping instructions in note 3 were unlawful, a conflict among other circuits on the issue, subsequent amendments to the note that at least one circuit held resolved the previous conflict, and a 1998 unpublished Fifth Circuit opinion that held a district court erred in *not* following the grouping instruction, but which did not cite the earlier decision or the amendments). After discussing the confusing state of the law on this issue, the Fifth Circuit held that McLymont could not establish "that the district court's error was 'clear and obvious' – if the district court erred at all." (D.E. 44 at 3.) Thus, McLymont's claim that the grouping was illegal was addressed by the Fifth Circuit and denied. Kalish bars the claim. 780 F.3d at 508.

**D.     Claim That the Court Erred in Its Computation of the Failure to Appear Offense Level**

As noted, McLymont's third claim is closely tied with his second. That is, he claims that the Court erred in its application of the guidelines. Again, he claims that the two offenses should not have been grouped, and that the failure to appear count should have been an offense level 10, without the obstruction of justice enhancement, which would have resulted in a guideline sentence of 6-12 months on the failure to appear count.

For the same reasons that his second claim fails, this claim also is devoid of merit. First, the claim is not cognizable in § 2255 proceedings. Williamson, 183 F.3d at 462. Second, the grouping of the offenses was already determined by the Fifth Circuit not to be plain error. (D.E. 44.) Thus, the issue has been raised and disposed of and is not properly before the Court. Kalish, 780 F.2d at 508.[4]

## E.     Ineffective Assistance Claims

McLymont's motion contains several allegations that could be construed as a claim that his counsel was constitutionally ineffective. The government's response lists those allegations as a fourth ground for relief. In his reply, McLymont asserts that he has three grounds for relief, not four. (D.E. 53 at 1.) Nonetheless, he also reiterates the allegations that his counsel did not properly communicate with him and did not raise issues on appeal that he asked him to raise. Thus, out of an abundance of caution, the Court will also address these allegations and treat them as claims of ineffective assistance of counsel.

Ineffective assistance claims are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. U.S. v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v.

---

[4] See also infra at Section E.1 (explaining why sentencing him separately for the two offenses likely would not have resulted in any benefit to McLymont).

10

Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

McLymont alleges that his counsel failed to adequately communicate with him, failed to object to the fact that McLymont did not have adequate time to review the final PSR, and failed to object at sentencing and on appeal to the calculation of the offense level for the failure to appear offense. (D.E. 54 at 7-11.)

### 1. Failure to argue that the guidelines for the failure to appear claim were misapplied

As noted, McLymont claims that his attorney should have argued both at sentencing and on appeal that the failure to appear guidelines were misapplied by the Court.

McLymont's claim that his counsel failed to raise a claim on appeal fails because McLymont cannot establish either deficiency or the second Strickland prong of actual prejudice. As to deficiency, appellate counsel "is not deficient for not raising every non-frivolous issue on appeal." United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000) (citing United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999)). Rather, only "solid, meritorious arguments based on directly controlling precedent are required to be discovered and brought to the court's attention." Phillips, 210 F.3d at 348. In any event, it is clear from the Fifth Circuit's opinion that counsel in fact challenged the grouping of the offenses. By implication, if not explicitly, then, counsel also challenged the Court's application of the guidelines to the failure to appear count.

Similarly, "[w]hen a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.'" United States v. Reinhart, 357 F.3d 521, 530 (5th

Cir. 2004) (quoting <u>Phillips</u>, 210 F.3d at 350). This is a showing McLymont has not made.

Notably, although McLymont contends that this is a separate argument from the argument that the two offenses should not have been grouped, he is incorrect. In fact, this argument is dependent upon the grouping being illegal or improper. That is, McLymont contends that his "failure to appear" sentence should have been determined based on the offense level of the underlying offense. (<u>See</u> D.E. 46 at Attachment 3 (setting forth analysis).) This analysis is only applicable, however, if the two offenses are not grouped.

Where, as here, the two offenses are grouped for sentencing purposes, then the analysis McLymont posits is inapplicable. <u>Compare</u> U.S.S.G. § 2J1.6, appl. note 3 (requiring that a failure-to-appear conviction be treated as an obstruction-of-justice enhancement to the underlying felon-in-possession sentence and that the two convictions then be grouped together pursuant to § 3D1.2(c)); <u>with</u> U.S.S.G. § 2J1.6(a)(2) (setting forth the analysis urged by McLymont, which is inapplicable in cases where there are convictions for both the failure-to-appear conviction and an underlying felony). As already noted, the Fifth Circuit held in this case that the grouping of the offenses was not "plain error," if it was in error at all. (D.E. 44 at 3.) If the grouping of the offenses was not plain error, then consequently there was no plain error in the Court's failure to use the analysis advanced by McLymont. Based on the foregoing, even if counsel had raised this precise claim on appeal, he would not have prevailed. A failure to raise a meritless claim does not constitute ineffective assistance. <u>See</u> <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Additionally, the Court notes that even if counsel had successfully raised the objection ***at***

*sentencing* and McLymont had been sentenced separately for the two offenses, he has not shown a "reasonable probability" that he would have received a lesser sentence overall. If the two offenses had not been grouped and he had been sentenced separately, the 2002 conviction for conspiracy would have still had a total offense level of 26. Although the Court would not have given an enhancement for obstruction of justice, it also would not have given McLymont a reduction for acceptance of responsibility. (See D.E. 31 at 21 (Court indicating that, if the two offenses were separated, it was not inclined to award acceptance in the conspiracy case because of the failure to appear)); see also U.S.S.G. 3E1.1, appl. note 1(d) (indicating that a prompt voluntary surrender would support an award of acceptance, and implying that a failure to appear would not); id. at appl. note 1(h) (if a defendant is untimely in manifesting acceptance, he may be denied a reduction for acceptance); id. at appl. note 4 (conduct that could support an enhancement for obstruction of justice will almost always prevent a reduction for acceptance of responsibility). Thus, the base offense level of 26 would have remained unaltered, and resulted in a guideline range on the conspiracy count of 63-78 months.

As to the failure to appear count, it would have had a base offense level of 6, plus another 9 levels because the underlying conviction (i.e., the conspiracy count) was punishable by at least 5 years and no more than 40 years. U.S.S.G. 2J1.6(a)(2); 2J1.6(b)(2)(A); see also PSR at ¶ 51 (noting the 40-year statutory maximum pursuant to 21 U.S.C. § 841(b)(1)(B)). If McLymont had received the same 2-point reduction for acceptance of responsibility, McLymont's total offense level would have been 13 (15 minus 2), with a resulting guideline range for the failure-to-appear count of 12-18 months.

Thus, although it is possible that the Court could have sentenced him at the low end of the

guidelines for both counts, resulting in a total sentence of 75 months, if run consecutively,[5] it is much more likely that the Court would have applied the high end of the guidelines, just as it did when the offenses were grouped.[6] If the Court had applied the high end of both guideline ranges and imposed consecutive sentences, the total sentence could have been as high as 96 months, instead of the 78 months McLymont received, which was the maximum the Court could impose in grouping the sentences.  Accordingly, McLymont has not shown that, even if his counsel had raised the issue at sentencing or on appeal, that there was a "reasonable probability" he would have received a lesser sentence.  See Phillips, 210 F.3d at 350 (in order to show prejudice as a result of counsel's performance at sentencing, a defendant must show that there is a reasonable probability that but for counsel's alleged errors, his sentence would have been different).  Because he cannot show prejudice, this claim, too, fails.

### 2. Failure to adequately communicate

McLymont also asserts that his counsel failed to communicate with him after the initial call for sentencing, and thereafter refused to take McLymont's calls.  The affidavit of his attorney, Chris Iles, disputes this.  Mr. Iles testified that he "had several in person conferences with the defendant, several phone conferences with him, in addition to receiving numerous letters from the defendant and writing him at least 29 letters." (D.E. 51, Iles Affidavit at 2.)

---

[5] The Court would have been required to apply the two sentences consecutively. See 18 U.S.C. § 3146(b)(1)(B) (a sentence imposed for a failure to appear offense "shall be consecutive" to the sentence of imprisonment for any other offense).

[6] Notably, the government recommended a sentence of only 72 months, but the Court chose to impose the highest end of the guidelines, 78 months. (See D.E. 32 at 56, 60, 63.) It then divided the sentences into 60-month and 18-month sentences, to run consecutively. The record clearly shows, however, that the Court intended to give the highest sentence it could. (See D.E. 32 at 60-63 (initially imposing a 78-month sentence on each count, to be served concurrently, but then breaking down the two sentences to comply with the requirement that a consecutive sentence be imposed).)

Even accepting McLymont's allegations as true, however, he is not entitled to relief. McLymont has not identified any way in which the alleged lack of communication resulted in a different outcome for his case. Thus, he cannot establish the prejudice prong of Strickland and this claim is thus without merit.

### 3. Failure to object to inadequate time to review the PSR

McLymont's final contention regarding his counsel's inadequacies is that his counsel should have objected to the limited time to review the PSR. As noted supra at Section IV.B., McLymont's contention that he had an insufficient amount of time to review the PSR is without merit. It does not constitute a constitutional violation. Accordingly, his counsel was not constitutionally ineffective for failing to challenge it. Kimler, 167 at 893 (failure to raise a meritless argument cannot support a successful ineffective assistance of counsel claim).

For all of the foregoing reasons, McLymont's claims of ineffective assistance of counsel fail.

### F. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although McLymont has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires

an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of McLymont's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. 537 U.S. at 327 (citing Slack, 529 U.S. at 484). McLymont is not entitled to a COA as to his claims.

## V. CONCLUSION

For the aforementioned reasons, the government's motion to expand the record (D.E. 51 at 4) and McLymont's motion to expand the record (D.E. 54) are both GRANTED. McLymont's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 46) is DENIED. Additionally, McLymont is DENIED a Certificate of Appealability.

It is so ORDERED this 27th day of February, 2008.

_____
Janis Graham Jack
United States District Judge